IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARANDA R. SAVAGE,                          Case No. 1:13-cv-01280-AA
                                                OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Marlene R. Yesquen
Black, Chapman, Webber & Stevens
221 Stewart Avenue, Suite 209
Medford, Oregon 97501
      Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Maranda Savage brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title XVI supplemental security income ("SSI") and Title II disability insurance benefits ("DIB") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On October 5, 2009, plaintiff applied for SSI and DIB. Tr. 180-94. Her applications were denied initially and upon reconsideration. Tr. 104-18. On February 17, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 45-71. On March 21, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 22-39. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Born on April 7, 1983, plaintiff was 27 years old on the amended alleged onset date of disability[1] and 28 years old at the time of the hearing. Tr. 47, 180. Plaintiff completed the eleventh

---

[1] Plaintiff initially alleged disability as of June 15, 2009. Tr. 187, 214. At the hearing, plaintiff amended her alleged onset date to "April 30, 2010, which coincides with the evaluation by the psychologist, Douglas Col." Tr. 47.

grade and has not obtained a GED. Tr. 49, 394-95. She was previously employed as a fast food worker, cashier, and cleaner. Tr. 64, 241. Plaintiff alleges disability as of April 30, 2010, due to "[b]i-polar mania." Tr. 214; see also Pl.'s Opening Br. 2.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential

Page 3 - OPINION AND ORDER

process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner considers whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner evaluates whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must determine that the claimant can perform other work that exists in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner

meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 25. At step two, the ALJ determined that plaintiff had the following severe impairments: obesity, bipolar disorder, anxiety disorder, and cannabis dependence. Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 26.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," but with non-exertional limitations:

> [she] is able to remember work-like procedures and can understand, remember, and carry out simple instructions, but [she] is not capable of tasks requiring understanding and remembering detailed instructions. In addition, [plaintiff] can carry out and maintain concentration and persistence for simple instructions on a full-time basis, but cannot do so for more complex tasks. Further, [she] is capable of appropriate contact with supervisors, but only occasional contact with co-workers and only occasional, indirect public contact. In other words, [plaintiff] is able to perform simple, repetitive tasks with little or no public contact and only occasional contact with co-workers, and she can get along with supervisors adequately.

Tr. 28.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 36. At step five, the ALJ determined

Page 5 - OPINION AND ORDER

that light and sedentary exertion jobs existed in significant numbers in the national and local economy that plaintiff could perform despite her impairments, such as clamper, laundry worker, kitchen helper, housekeeping cleaner, cleaner and polisher, and bakery worker. Tr. 38. The ALJ therefore concluded that plaintiff was not disabled under the Act. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; (2) rejecting the lay testimony of her husband, Nick Savage; (3) improperly assessing the medical opinion evidence from Alan Mersch, D.O., and Douglas Col, Ph.D.; and (4) failing to account for all of her limitations in the RFC, thereby rendering the step five finding invalid.

I.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony

is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is unable to work due to "[n]ot being able to handle leaving the house or dealing with people." Tr. 53. Although she denied panic attacks, plaintiff explained "I get really stressed out when I leave the house [and] I only want to go to the specific place that I'm going [otherwise] I get really flustered and upset." Id. Plaintiff also endorsed problems with concentration "[q]uite a bit," but clarified, in response to subsequent questions from the ALJ, that this was largely due to the fact she was "busy" taking care of her four young children. Tr. 60-61. Further, she reported trouble sleeping because of "mild hallucinations," which she also experienced during the day "three, four times a month." Tr. 58. When the ALJ noted that plaintiff had been suffering from mental health issues "for a long time [and] worked successfully with them in the past," she stated that her conditions have "gotten worse over the years . . . I didn't used to have a problem leaving the house, but I don't like

Page 7 - OPINION AND ORDER

to leave the house for anything [and] I just get more overwhelmed than I used to." Tr. 63.

After summarizing plaintiff's hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible due to her failure to seek mental health treatment, activities of daily living, work history, inconsistent statements, and tendency to exaggerate, as well as the lack of corroborating objective medical evidence. Tr. 28-35.

Notably, the ALJ determined that plaintiff's "overall treatment history and use of medications, which reflect that [she] has sought relatively little care . . . indicates [that she] does not believe her conditions are as serious as she claims." Tr. 33. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. Burch, 400 F.3d at 681. Nevertheless, before drawing a negative inference from a claimant's failure to seek treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, available at 1996 WL 374186.

Here, substantial evidence supports the ALJ's conclusion. Plaintiff has been aware of her mental impairments for over a decade and at least one provider referred her to counseling. See Tr. 364, 395. Yet plaintiff indicated at the hearing that she was not currently receiving psychological treatment and had no plans to

Page 8 - OPINION AND ORDER

do so in the future, and there is no evidence in the 525 page record reflecting any such treatment during the relevant adjudication period. Tr. 59. In particular, plaintiff testified that she recently reinitiated counseling at Jackson County Mental Health, but stopped going because "[they] told me that there was nothing they could do for me." Id. However, the records from Jackson County Mental Health do not manifest any longitudinal treatment; rather, plaintiff only attended one session, rescheduling the second and missing the third, before she stopped showing up altogether. Tr. 33, 440-41. The only other evidence in the record that refers to plaintiff's previous mental health treatment is from the one-time examination performed by Edwin Pearson, Ph. D., in March 2010, during which plaintiff reported seeing "a counselor about six years ago [for] five visits [but] did not feel like she was benefitting, and stopped going."[2] Tr. 395.

---

[2] Plaintiff argues, for the first time in her reply brief, that: (1) "[n]othing in the attendance report" from Jackson County Mental Health is inconsistent with her hearing statement that "she was told" additional treatment would not be beneficial; and (2) the fact that she stopped going to counseling in 2004 reflects "a failure of treatment" and not a failure to seek treatment. Pl.'s Reply Br. 19-20; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"). Essentially, plaintiff contends that "[o]ne should not be expected to persist in treatment, in this case counseling, if it is not providing benefit." Pl.'s Reply Br. 20. Regarding plaintiff's first argument, she only attended one counseling appointment at Jackson County Mental Health; had she been notified during that initial session that "there was nothing they could do for [her]," it is unlikely that subsequent counseling appointments would have been scheduled. Tr. 59, 440-41. Concerning her second argument, the fact that plaintiff received mental health treatment six years before the alleged onset date is immaterial, especially because the record does not contain

Plaintiff does not now proffer a reason, finance-related or otherwise, for her failure to obtain mental health services. See generally Pl.'s Opening Br.; Pl.'s Reply Br. Regardless, the record contains several treatment notes relating to plaintiff's physical impairments, establishing that she had no problem obtaining services when she wanted to or believed she needed them. See, e.g., Tr. 365-66, 455-69, 490-92, 494-522; see also Epperson-Nordland v. Colvin, 2013 WL 5774110, *5-7 (D.Or. Oct. 22, 2013) (affirming the ALJ's adverse credibility finding under analogous circumstances). There is also nothing in the record to suggest that plaintiff looked into no-cost or low-cost medical options. As the ALJ noted, "if [plaintiff's] conditions were as severe as she claims, one might reasonable expect to see more consistent and/or more aggressive - not to mention legally sanctioned - care." Tr. 34. Thus, as the ALJ reasonably concluded, plaintiff's failure to seek psychological treatment belies her hearing testimony that her mental impairments render her disabled.

Additionally, the ALJ resolved that plaintiff's credibility was impaired by her activities of daily living. Daily activities may serve as a basis for discrediting a claimant where they either "are transferable to a work setting" or "contradict claims of a

---

those treatment notes. Carmickle, 533 F.3d at 1165. Although not dispositive, the Court also notes that, in lieu of obtaining mental health services, plaintiff was using marijuana up until approximately February 2011, which "she smoke[d] daily, starting in the morning, and smoking a small amount throughout the day"; although she indicated at the hearing that this was medically prescribed, the record reflects that plaintiff did not hold a medical marijuana card, at least through May 2010. Tr. 33, 57, 62, 395-96, 428.

totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The record reveals that plaintiff takes care of her four small children, is independent in her self-care, cooks, cleans, does laundry and dishes, watches television, and plays video games. Tr. 233-37, 249-53. Plaintiff also left the house to attend doctors' appointments, go grocery shopping, and play outside with her children. Tr. 57, 61, 235-36, 252, 470. The ALJ expressly provided plaintiff with an opportunity to reconcile how staying "active all day long" with her kids was "different from performing full-time work," but plaintiff's response was vague and equivocal: "I honestly don't know the difference . . . when it comes to my kids I'll do anything for them . . . Working, I feel like I'm not there for my kids." Tr. 61. As the ALJ determined, plaintiff's daily activities evince an ability to work with appropriate non-exertional restrictions. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also found that plaintiff's employment history "does little to bolster the credibility of her claims" because she worked for several years with the same conditions and stopped working for reasons unrelated to her alleged disability. Tr. 35. When a claimant's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff indicated at the hearing that she was fired from her last job due to her

psychological conditions. Tr. 53-54; but see Tr. 254 (plaintiff remarking in her Adult Function Report, from December 2009, that she had never been fire or laid off, but rather "quit all my jobs"). Nevertheless, the record reflects that plaintiff has not worked or attempted to work since shortly after the birth of her fourth child and considered herself a stay-at-home. Tr. 35, 61, 86, 241, 249, 396; see also Tr. 62 (after the ALJ remarked that plaintiff's departure from the workforce coincided with the birth of her youngest child, she explained that she stopped working because "I was afraid that something was going to happen to my kids if I wasn't there"). While plaintiff's devotion to her children is admirable, the evidence of record undermines her main argument that stress and anxiety are the reasons why she cannot work.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle, 533 F.3d at 1162-63. The ALJ's credibility finding is affirmed.

II.   Lay Witness Testimony

Plaintiff also asserts that the ALJ neglected to provide a germane reason to reject the testimony of her husband, Mr. Savage. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to

reject such testimony. Id. (citation and internal quotation omitted). Nevertheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citations omitted).

In December 2009, Mr. Savage completed a Third-Party Adult Function Report. Tr. 233-40. Mr. Savage stated that plaintiff engaged in limited cooking, housework, and shopping, as well as took care of their children, watched television, and played video games. Tr. 233-36. He nonetheless reported that plaintiff "has always been sick," "is not good at taking instructions," has hallucinations, and "cannot handle [stress or] people very well [and gets] overwhelmed just thinking of being around others." Tr. 237-39.

The ALJ discredited Mr. Savage's third-party statements because his "report largely mirrors the report and testimony of [plaintiff] as to her alleged limitations and ability to work [and plaintiff's credibility has been] rejected." Tr. 35. The ALJ also found that "great weight cannot be given to all of Mr. Savage's statement because some of them, like many of [plaintiff's] statements, are not fully consistent with the record as a whole." Tr. 36. In addition, the ALJ noted the close relationship between plaintiff and her husband, and the fact that he "has a financial interest in the outcome of this case, since any benefits his co-

habiting wife receives will inure to the benefit of the household." Tr. 35.

Lay witness testimony may be disregarded on same basis as claimant's discredited subjective reports. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Inconsistency with the medical evidence is also an acceptable reason for rejecting third-party statements. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Further, nothing precludes an ALJ from considering the close relationship between a lay witness and a claimant when evaluating credibility. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In this case, Mr. Savage's Third-Party Adult Function Report was completed the same day as plaintiff's Adult Function Report and is virtually identical thereto. Compare Tr. 233-40, with Tr. 249-56. As addressed in section I, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to Mr. Savage. Critically, plaintiff's activities of daily living and failure to seek medical treatment, combined with the fact that she worked with her allegedly disabling conditions for several years, erode the credibility of both her and her husband's statements. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). The ALJ's decision is upheld as to this issue.

III. <u>Medical Opinion Evidence</u>

Plaintiff next argues that the ALJ impermissibly rejected the opinions of Drs. Mersch and Col. Plaintiff also repeatedly asserts that the ALJ neglected to develop the medical record in regard to her psychological conditions. <u>See, e.g.</u>, Pl.'s Opening Br. 24, 28; Pl.'s Reply Br. 7, 15.

A.    <u>Assessment of Dr. Mersch's and Dr. Col's Reports</u>

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. <u>Bayliss</u>, 427 F.3d at 1216 (citing <u>Lester</u>, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id.</u>

Initially, the Court notes that the medical record in this case is limited because, as discussed above, plaintiff did not seek mental health treatment for her allegedly disabling conditions. Accordingly, the entirety of the medical record consists of evidence from Dr. Mersch, plaintiff's treating source; Drs. Col and Pearson, who each performed one-time evaluations on plaintiff; and Dorothy Anderson, Ph.D., a state agency consulting source. Tr. 83-84, 320-90, 394-98, 409-15, 426-39, 455-522. As discussed in greater detail below, Drs. Mersch and Col indicated that plaintiff

is disabled, whereas Drs. Pearson and Anderson opined that plaintiff was capable of performing work consistent with the RFC.

i.    Dr. Mersch

In May 2009, plaintiff reinitiated care with osteopath Dr. Mersch after moving back to Oregon.[3] Tr. 363-64, 390. Plaintiff saw Dr. Mersch twice in May 2009 and then again approximately once per month from January through November 2011. Tr. 362-64, 390, 455-522. Dr. Mersch's chart notes from 2009 echo plaintiff's psychological complaints, while his reports from 2011 document treatment of plaintiff's intermittent physical conditions, as well as her requests to have disability paperwork completed. Id.

In September 2009, Dr. Mersch wrote a letter on behalf of plaintiff's DIB and SSI claims:

> Maranda has a diagnosis of BiPolar Disease. This disease apparently went undiagnosed for a number of years and she actually moved out of state for a few years and I did not see her. She recently returned to see me on 5/21/2009 to discuss her diagnosis. We placed her on medications for this and have been gradually increasing it as her symptoms don't seem to be getting better. I have advised Maranda that she needs to follow up with me, but she has no medical insurance. This disease affects her sleeping pattern which makes it hard for her to make the apt times I have available.

Tr. 392. In February 2011, Dr. Mersch authored a second letter, stating simply "[i]t is my medical opinion that for medical reasons, Maranda will be unable to participate in consistent, active, gainful employment." Tr. 448.

-------

[3] The record also contains Dr. Mersch's treatment notes from 2006 through 2008. Tr. 320-61, 365-89. The majority of this evidence pertains to plaintiff's pregnancies. As such, there is no mention of plaintiff's mental health issues during this time frame.

In April 2011, Dr. Mersch completed a check-the-box "Physical Residual Function Capacity Questionnaire" prepared by plaintiff's attorney. Tr. 449-53. The doctor indicated that his opinion was based on "hx, psych Dr. D. Col 4/10 & clmt." Tr. 449. He checked boxes reflecting that plaintiff was "[i]ncapable of even 'low stress' jobs" and her "pain or other symptoms [would] frequently" interfere with attention and concentration. Tr. 450. Dr. Mersch did not endorse any physical limitations, but reported that plaintiff's mental impairments, which commenced in "June 09" but "have lasted or can be expected to last [a] lifetime," were likely to cause her to be absent from work "20+" days per month. Tr. 449-53. Although this form did not solicit any information about drug use, the doctor checked a box denying alcohol abuse. Tr. 453.

The ALJ extensively evaluated the medical evidence from Dr. Mersch but ultimately was "unable to give full weight to [his opinion] for several reasons." Tr. 30-35. Namely, the ALJ afforded less weight to Dr. Mersch's reports because they were: (1) "largely relate[d] to [plaintiff's] mental limitations [but] Dr. Mersch does not appear to be a psychiatric expert"; (2) "base[d] at least in part on [plaintiff's] subjective allegations"; (3) "quite brief and conclusory" and "contradictory [to] clinical findings"; and (4) "inconsistent with other substantial evidence regarding [plaintiff's] ongoing abilities." Tr. 30-33. In addition, the ALJ observed that "it is not clear . . . that Dr. Mersch properly factored [plaintiff's] history of marijuana use into his assessment." Tr. 32.

Page 17 - OPINION AND ORDER

It is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings. Thomas, 278 F.3d at 957; see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). Additionally, "[a]n opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation, unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's opinion). More weight is afforded "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted). An ALJ also need not accept a medical opinion that fails to take into account a claimant's drug or alcohol use. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999).

An independent review of Dr. Mersch's reports reveal that they are conclusory and, outside of the April 2011 form, not accompanied by reference to any objective findings.[4]  Tr. 392, 448-53.

---

[4] While Dr. Mersch's April 2011 opinion cites to Dr. Col's evaluation, there is no indication that he considered evidence from Dr. Pearson.

Nevertheless, none of his disability opinions contain narrative descriptions or references to the doctor's own objective medical findings, likely because Dr. Mersch's treating relationship with plaintiff consisted mostly of prescribing and refilling her medications, and documenting her subjective statements; the only cursory objective evaluations that he performed yielded largely normal results. See Tr. 362-64, 390, 455-522. As the ALJ noted, Dr. Mersch, unlike Drs. Pearson, Col, Kennemer, and Anderson, is not a mental health specialist and, overall, his reports reflect little in the way of psychological counseling or treatment. Indeed, the majority of the evidence from Dr. Mersch relates to treatment of plaintiff's transitory physical conditions, such as knee pain or ear pressure. See, e.g., Tr. 455-66, 490. The only chart note from 2011 pertaining to plaintiff's mental functioning shows that she was "doing fairly well" and off her anxiety medication. Tr. 470. In other words, Dr. Mersch's own chart notes do not support his disability opinions.

Moreover, there is no indication that Dr. Mersch took plaintiff's drug into consideration. Plaintiff told Dr. Pearson that she smoked marijuana all day, every day. Tr. 395. Less than two months later, she reported to Dr. Cols that she continued to smoke non-medical marijuana. Tr. 428. Yet there is no mention in any of Dr. Mersch's chart notes or his disability opinions reflecting plaintiff's chronic substance use. From this omission, the ALJ reasonably concluded that Dr. Mersch's assessments were less reliable. See Batson, 359 F.3d at 1198. Lastly, the record

demonstrates that Dr. Mersch based his opinion on plaintiff's uncredible subjective symptom statements. Plaintiff repeatedly solicited disability opinions from Dr. Mersch. See, e.g., Tr. 457, 493. Moreover, he "[f]illed out [the April 2011 disability] form together [with plaintiff]." Tr. 487. Indeed, Dr. Mersch acknowledged plaintiff's self-reports in his April 2011 opinion. Tr. 449. As such, the ALJ provided legally sufficient reasons, supported by substantial evidence, to reject the opinion of Dr. Mersch. The ALJ's evaluation of Dr. Mersch's opinion is therefore affirmed.

ii.  Dr. Col

In April 2010, plaintiff underwent a "Psychodiagnostic Testing Evaluation" with Dr. Col. Tr. 426-39. Dr. Col's assessment was based on six tests, although the tests themselves are explained within the report, as well as a clinical interview with plaintiff. Tr. 426-33. Two of these tests revealed results indicating that plaintiff "tended to exaggerate her symptoms and paint herself in an unrealistically negative light," although Dr. Col remarked that "[t]his kind of response is not unusual in disability applicants, and usually simply reflects a desire to receive the help and support for which they are applying." Tr. 429-30. The doctor diagnosed plaintiff with depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and avoidant personality disorder. Tr. 433. In concluding his report, he described plaintiff as "a woman with an inadequate personality structure, who defensively retreats from the world around her while simultaneously

wishing that she could receive more nurture and acceptance from other people." Id. As a result of these traits, Dr. Col opined that plaintiff "is clearly suffering from a rather severe characterological disorder that would seem to make gainful employment largely impossible." Tr. 334.

In the accompanying "Rating of Impairment Severity" form, prepared on the same day, Dr. Col reported that plaintiff experienced mild limitations in activities of daily living and concentration, persistence, or pace, and extreme impairment in social functioning. Tr. 438; see also Tr. 436-37 (Mental RFC prepared by Dr. Col).

The ALJ "g[a]ve reduced weight to the functional assessment of Dr. Col for many of the same reasons discussed above in connection with Dr. Mersch - such as Dr. Col's reliance on the subjective statements of a non-credible [plaintiff,] his failure to fully account for the impact of her history of marijuana use[,] [and the fact that his opinion is] not consistent with the evidence as a whole." Tr. 32-33. In assessing the examining source evidence, the ALJ elected to give more weight to Dr. Pearson because, while "Dr. Col appears to have performed a greater number of psychological tests than did Dr. Pearson, Dr. Col seems not to have given careful consideration to the results of those tests, [which] suggest[ed] that [plaintiff was] exaggerating her symptoms." Id.

As discussed above, an ALJ may reject a medical opinion that is based on a claimant's discredited self-reports. Andrews, 53 F.3d at 1043; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

Page 21 - OPINION AND ORDER

Cir. 2001) (affirming the rejection of a treating source's opinion that "relied only on [the claimant's] subjective complaints and on testing within [her] control"). Moreover, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, nothing Dr. Col's objective observations support his dire opinion of plaintiff's functioning. Compare Tr. 428, with Tr. 433. For instance, Dr. Col concluded that plaintiff has "no idea of how to interact meaningfully with others," but nonetheless observed that she was happily married, able to pay attention and stay on task, and had a good capacity for reasoning. Tr. 428. Further, there is no indication in Dr. Col's report or otherwise in the record that plaintiff neglected to act appropriately in regard to her medical examiners or their staff members. Accordingly, the ALJ reasonably disregarded Dr. Col's opinion to the extent it was premised on plaintiff's self-reports or testing within her control. The ALJ nonetheless did not wholly reject Dr. Col's report by limiting plaintiff's RFC to "no public contact and only occasional contact with co-workers." Tr. 28.

Essentially, as the Commissioner notes, "[t]he ALJ was compelled to choose between two examining opinions: Dr. Pearson's opinion versus Dr. Col's opinion." Def.'s Resp. Br. 12-13. Dr. Pearson examined plaintiff less than two months prior to Dr. Col and assessed the same diagnoses, as well as similar functional

limitations:  mild  to  moderate  impairments  in  concentration,
persistence,  or  pace  and  in  social  functioning.  Tr.  397.  Despite
these  likenesses  between  their  reports  and  the  circumstances  under
which  they  were  rendered,  Dr.  Pearson,  unlike  Dr.  Col,  opined  that
plaintiff  "is  not  viewed  as  unemployable,  though  vocational  options
are  narrower  than  for  most  of  her  age  and  level  of  intelligence."
Id. After  reviewing  the  record,  the  Court  cannot  conclude  that  the
ALJ  acted  unreasonably  in  finding  the  record  as  a  whole  was  more
consistent  with  Dr.  Pearson's  opinion  and  therefore  affording  it
more  weight,  especially  in  light  of  the  other  evidence  of  record
and  the  fact  that  Dr.  Col's  report  relied  heavily  on  plaintiff's
uncredible  statements  and  testing  within  her  control.  Tr.  32;  see
also  Tr.  415.  Finally,  contrary  to  plaintiff's  contention,  Dr.
Pearson's  report  is  not  any  less  reliable  because  he  administered
fewer  tests  that  Dr.  Col.  See  20  C.F.R.  §§  404.1527(c)(3),
416.927(c)(3).  For  these  reasons,  the  ALJ's  assessment  of  the
medical  opinion  evidence  is  upheld.

     B.   Failure to Develop the Record

    The  claimant  bears  the  burden  of  proving  the  existence  or
extent  of  an  impairment,  such  that  the  ALJ's  limited  "duty  to
further  develop  the  record  is  triggered  only  when  there  is
ambiguous  evidence  or  when  the  record  is  inadequate  to  allow  for
proper  evaluation  of  the  evidence."  Mayes v. Massanari,  276  F.3d
453,  460  (9th  Cir.  2001).

    In  March  2010  and  April  2010,  plaintiff  underwent  two
consultive  psychological  examinations  with  Dr.  Pearson  and  Dr.  Col,

Page 23 - OPINION AND ORDER

respectively, to garner medical opinion evidence concerning her mental functioning. Specifically, after plaintiff was "evaluated by Dr. Edwin Pearson [and] denied benefits" on "the basis of that evaluation," she sought a second opinion from Dr. Col. Tr. 426. The ALJ subsequently conducted a hearing at plaintiff's request, thereby providing her with an opportunity to testify and submit additional evidence; in fact, the ALJ explicitly agreed to keep the record open for 10 days after the hearing. Tr. 69. There is no indication that plaintiff sought any additional treatment thereafter or furnished any supplemental evidence to the ALJ, although she did submit her pharmacy records to the Appeals Council pursuant to her request for review. Tr. 5.

In any event, neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. In addition, contrary to plaintiff's assertion, further development is not required simply because Dr. Mersch's reports neglected to address or otherwise acknowledge her daily drug usage, or because Dr. Col's and Dr. Mersch's opinions are vague as to the onset date of disability. Rather, plaintiff failed to carry her burden of proof, in part because she neglected to seek regular treatment for her allegedly disabling mental impairments, which does not equate to an inadequacy or ambiguity in the evidence. The ALJ's duty to more fully develop the record was not triggered.

IV.  RFC Assessment and Step Five Finding

Finally, plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not account for the

functional limitations described in his testimony and the third-party statements, as well as in the medical opinion evidence furnished by Drs. Mersch and Col. The RFC is the maximum a claimant can do despite her limitations. <u>See</u> 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, <u>available at</u> 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the statements of plaintiff, Mr. Savage, Dr. Mersch, and Dr. Col were properly discredited by the ALJ. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. <u>Bayliss</u>, 427 F.3d at 1217-18; <u>Stubbs-Danielson</u>, 539 F.3d at 1175-76. The ALJ's RFC and step five finding are upheld.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this ⟨30th⟩ day of July 2014.

_____
Ann Aiken
United States District Judge